IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2005

**STATE OF TENNESSEE v. JONATHAN RAY TAYLOR**

**Extraordinary Appeal from the Criminal Court for Anderson County
No. A4CR0014    James B. Scott, Jr., Judge**

---

**No. E2004-02866-CCA-R10-CD - Filed August 22, 2005**

---

As a result of the shooting death of his wife, the Anderson County Grand Jury indicted the Defendant, Jonathan Ray Taylor, for second degree murder and reckless homicide. A plea agreement was reached in which the second degree murder count would be dismissed and the Defendant would plead guilty to reckless homicide and receive a two year sentence. The trial court rejected this plea agreement. The State then attempted to nolle prosequi the second degree murder charge, and the trial court refused to allow the nolle prosequi. We granted the Defendant's application for interlocutory appeal to address whether the trial court erred: (1) when it rejected the proposed plea agreement; (2) when it denied the State's request to enter a nolle prosequi on the charge of second degree murder; and (3) when it refused to recuse itself. Finding that there exists no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Kevin C. Angel, Oak Ridge, Tennessee, for the Appellant, Jonathan Ray Taylor.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; James N. Ramsey, District Attorney General; and Jan Hicks, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION
I.  Facts**

This case involves the death of Patricia Lynn Taylor, the Defendant's wife, who was shot to death. The Defendant was originally charged with the general offense of criminal homicide, and the general sessions court bound the charge over to the grand jury. The Anderson County Grand Jury indicted the Defendant for second degree murder in count one and reckless homicide in count two. Subsequently, the State and the Defendant reached a plea agreement, under which the second degree

murder charge would be dismissed, and the Defendant would plead guilty to reckless homicide and receive a two-year sentence, to be served in the Tennessee Department of Correction. The trial court conducted a plea hearing, and the State asserted to the trial court the following in support of the plea agreement:

> This was a situation where the [D]efendant called 9-1-1 emergency people, and the police responded. When they arrived, they found the [D]efendant crying and his wife was there and she had been shot. The situation was that she was shot in the arm, and the [D]efendant had attempted to put some towel or something around her arm.
>
> And the [D]efendant stated that his wife had gone out all day long, and the [D]efendant was very upset about this. He has a history of depression, and he's a legal user of methadone which was found. The methadone was found in the house. He became upset that she had been gone all day. He got out a gun, had some suicidal thoughts. When she got home, he was arguing about it. He still had the gun in his hand and was waving it around. The gun discharged. It struck the victim in the upper arm. Just one shot was fired. There was no exit wound from the upper arm. When emergency crews came, of course, everybody did everything that they could but something occurred, possibly a ricochet of the bullet once it entered the arm. She dies as a result of that injury to her arm. Basically that's what occurred.
>
> The [D]efendant admitted what he had done and was upset about it. He's been in jail, I guess, since this occurred.

The trial court then asked if any of the victim's family was present, and the State responded that the victim's sister and mother were present. At that time, an unidentified member of the victim's family stated that she had sent the court a letter, and, upon request, the trial court stated that it would now read that letter and place the letter in the court file. The trial court then asked the woman if she would like to make a statement, and she said:

> Well, I just think that from what I've heard the plea bargain is, it is not an adequate sentence for murder. You don't pick that gun up to scare someone with it, and put your finger on the trigger and pull it, and call it an accident. What you're telling me is I can run out of a house and say: Oh, God, I'm sorry. I've shot somebody, and I get off free of charge. It's not fair. He doesn't deserve to get out of jail.

The trial court refused to accept the plea agreement, and set the case for trial, stating:

> I'm not going to accept the plea . . . a life has been taken. This man has a component. He can explain those matters or choose not to even testify in the case. The burden is on the government. He is pleading to what he has in the indictment. I do not have enough wisdom to know whether or not this is really that which – I do not accept the plea because a life has been taken, and there is violence.

Subsequently, the Defendant filed a motion requesting that the trial court recuse itself based on the trial court's refusal to accept the plea agreement and because the trial judge allegedly stated in a local newspaper article that the reason the plea agreement was denied was because the trial court "'received a letter from the alleged victim.'" At a hearing on the motion, the State again addressed the issue of why it wanted to <u>nolle</u> the second degree murder count, stating that it did not want to proceed on the second degree murder count of the indictment because "of [an expert]'s evidence to them that no one could have intended the consequences of his action, which is required for second degree murder, by shooting someone in the arm." The trial court responded as follows:

> Well, this Court did not hear that aspect of things . . . . It had to do with taking a gun and discharging that gun regardless of where it hit the individual, and it was because a life was taken through violence. Now I can either accept or reject, and pleas usually are accepted by this Court. I do not care who this young man is. I have no idea who he is. For you to ask this Court to recuse itself simply because of something that was said by the newspaper, I cannot control that. But I can assure you that this Court is not doing this because of any personal malice or any ill feelings towards this individual nor because a letter was written, but because of the facts where someone takes a gun and discharges it at another human being.

> _____. . . .

> This Court is giving you for the record the reason for my rejecting the plea. Peculiarly, it is within the province of the state to enter into these agreements and I honor them. But also there is that aspect of a plea that is peculiar for the Judge, quite often it is the punishment that is imposed. Now the pleas may be justified on a reckless homicide and in other matters that the state has investigated, and I will honor them. But when a life has been taken by a deadly weapon as a result of whether it is an emotional aspect of things or whether it is something that would be considered to be mistaken, it is not mistaken when you have a gun and you point it at another human being.

At the conclusion of the hearing, the following exchange occurred:

> THE COURT: The Court can either accept . . . [defense counsel], there is not anything wrong with you asking this Court to recuse itself. But when a life is taken, I try to protect society as a result of that, I want to make sure they know that it is not something that can lightly be explained away. I do not know all of the facts. I honor what you are saying. But when a gun is involved in it, it is different from an automobile taking someone's life unintentionally in reckless homicide. What I am saying to you is, we are setting a precedent here and it has nothing to do with him but it has something to do with people who take weapons and come in and try to explain that "I'm sorry. I really meant to shoot them in the arm."

The State filed a notice of nolle prosequi, stating the following:

> This case was set for plea of guilty on May 21, 2004 to the alternate charge in count 2 and the State submitted its first nolle prosequi on count 1 at that time. The Court rejected the plea. This second notice of nolle is presented to the Court to make clear that the State's notice of nolle of count 1 is not conditioned on the Court's acceptance of a plea to count 2. The nolle of count 1 is based on an absence of proof beyond a reasonable doubt of the intent required for second-degree murder. The State therefore requests dismissal of count 1 and then will proceed to a trial as required by the court and to carry its burden of proof on count 2 before a jury.

At a hearing on the State's notice of nolle prosequi, and the trial court stated that it would not accept the State's request to enter a nolle prosequi, stating:

> It is the nolle prosequi that I am not accepting, because I do not believe society is protected whenever we have someone who points a gun intentionally at somebody and says that they meant to shoot them in the arm and they die. I just do not feel that can be tolerated under the facts of this case, and I am not going to accept the plea that is submitted here.

The following exchange then occurred between the trial court and the State:

> [THE STATE]: Your Honor, I guess I need to make clear. The nolle is not tied to the plea. The nolle is part of what we consider – we want to stand before a jury with the ability to carry a burden of proof – and so the nolle is basically saying: We can't carry a burden of proof in that situation.
>
> THE COURT: You can tell the Court of Appeals what you are saying to me, General. I am not setting a precedent here where guns are taken up. I know you say that about . . . their ability to carry the burden, but I have clear and convincing evidence. That when you point a gun at somebody as far as I am concerned and they die as a result of that gunshot, then there should be a question of whether or not that culpable mental state is heard by this jury.
>
> That is the reason for the Court turning it down.
>
> [THE STATE]: Okay. The Court is holding that just what the Court heard, not knowing what else is in my file, okay. Fine.
>
> THE COURT: I cannot know what is in your file. As a Judge, I do not know that. You have certain discretion. One of the discretions you have is almost absolute. You can nolle based upon the facts that you know them to be, and I cannot up here turn that down unless it is clear and convincing evidence. As far as I am concerned, it is

-4-

clear and convincing when somebody comes here and they point a gun at someone and that gun goes off. And then intentionally got the gun because they were wanting to point it at somebody. That to me is a danger to society and should not be tolerated. That is the reason for it.

On August 17, 2004, the trial court issued an order rejecting the Defendant's plea, which stated:

> The [D]efendant, Jonathan Ray Taylor, appeared with court-appointed counsel and along with the State of Tennessee, presented to the Court a plea agreement under Tennessee Rules of Criminal Procedure 11(e)(1)(c). The Court rejected the plea agreement for the reason that the statement presented to the Court contains facts this Court finds to be inconsistent [with] reason and logic and against the interest of the general public. The [D]efendant would serve what amounts to be a jail sentence and the facts are clear that the [D]efendant intentionally obtained a firearm because his wife was late or tardy in returning home from shopping. The [D]efendant shot his wife and terminated her life with a firearm. The [D]efendant's violence and intentional wielding of a firearm resulting in the death of his wife gives added angst to the Court when the wife's only wrong was her lateness in returning home from shopping. A distraught husband cannot rationalize these acts so as to reduce the charge to a reckless homicide or a negligent homicide without establishing a policy which would endanger society and cheapen the taking of a life by violence.
>
> The plea submitted is therefore rejected.

At a hearing, on September 22, 2004, the trial court reiterated its reasoning for rejecting the plea agreement:

> Under Rule 11 that was my position, and it had to do . . . nothing against the person personally, but it had to do with the fact situation in which a deadly weapon was used and someone was killed. The Grand Jury returned an indictment for second degree murder, as well as an alternative plea of [reckless] homicide. So I do not know a great deal about the facts other than the fact that I do not want to be in a position of having someone explain away the taking of a life with a deadly weapon.

The trial court also concluded that it would not accept the nolle because "[i]t is just attempting to do [in]directly what you are denied to do directly."

The Defendant filed a motion for interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure, which the trial court denied. The Defendant filed a request for extraordinary appeal, pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. The State filed a response in which it offered no objection to the extraordinary appeal for the issues of the trial court's rejection of the plea agreement and the issue of the trial judge recusal, although the State stated that

it is prepared to proceed to trial on the reckless homicide charge.  The State joined in the Defendant's application for an extraordinary appeal from the trial court's refusal to accept the nolle prosequi for the second degree murder count in the indictment.  This Court granted the Defendant's request for extraordinary appeal because "there is no indication that the trial court applied the 'manifest public interest' standard under Rule 48(a) in denying the state's nolle prosequi request."

## II. Analysis

Concluding that the trial court's refusal to allow the state to nolle prosequi the second degree murder charge "so far departed from the accepted and usual course of judicial proceedings" that immediate review was required, we granted the Defendant's application for extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure.  In the interest of judicial economy, we also granted appeal on the issues of whether the trial court erred when it: (1) refused to accept proposed plea agreement; and (2) refused to recuse itself.  In his brief, the Defendant states that, after conducting further research, he "does not believe that a good faith argument can be made that the trial court['s] actions warrant a reversal on appeal for failure to accept the plea agreement as offered."  Accordingly, we find that this issue has been abandoned on appeal, and we will only address the other two issues presented by the Defendant.

## A. Nolle Prosequi

Both parties contend that the trial court abused its discretion when it denied the State's request to nolle prosequi the second degree murder count from the Defendant's indictment.  A nolle prosequi is a formal entry upon the record by the "prosecuting officer in a criminal action, by which he declares that he will no[t] further prosecute the case."  State v. D'Anna, 506 S.W.2d 200, 202 (Tenn. Crim. App. 1973); see State v. John Ruff, No. W1999-01536-CCA-R3-CD, 2001 WL 58732, at * 2 (Tenn. Crim. App., at Jackson, Jan. 19, 2001), *no perm. app. filed*. Tennessee Rule of Criminal Procedure 48(a) governs the dismissal or nolle prosequi of a criminal charge upon motion of the State, and it reads as follows, "The state may *by leave of court* file a dismissal of an indictment, presentment, information or complaint and the prosecution shall thereupon terminate.  Such a dismissal may not be filed during the trial without the consent of the defendant."  (emphasis added).

In State v. Harris, 33 S.W.3d 767 (Tenn. 2000), our Supreme Court stated that "[t]he analysis established to consider a motion to nolle prosequi seeks to balance the need to allow prosecutors the freedom to exercise legitimate discretion with the need to prevent abuse of the power to dismiss." Id. at 770.  In Harris, the Court also stated that although "Rule 48(a) grants the trial court some control over the prosecutor's discretionary powers, that control is limited."  Id.  In State v. Landers, 723 S.W.2d 950 (Tenn. 1987), our Supreme Court noted that our Rule 48(a) is identical to the Federal Rule of Criminal Procedure 48(a), and it adopted the federal court's interpretation of that rule: that the trial court should not interfere with the discretion of the prosecutor to dismiss a case unless the dismissal "is contrary to the manifest public interest."  Id. at 953; see also United States v. Cowan, 524 F.2d 504, 513 (5th Cir. 1975).  The federal courts concluded that the rule required "leave of the court" prior to dismissal in order to protect defendants from harassment by charging, dismissing, and

re-charging defendants without placing them in jeopardy. See Rinaldi v. United States, 434 U.S. 22, 29 n.15 (1977). Further, the Harris Court determined that "[i]n order for appellate courts to affirm that the trial court's discretionary power to deny a motion to *nolle prosequi* is used only when the public interest is at stake, the trial court should provide a clear showing of its reasons for denying the motion and should ensure that the reasons are made part of the record." Harris, 33 S.W.3d at 771.

The first issue we must decide is whether the trial court in this case provided a clear showing of its reasons in the record for concluding that the State's motion was contrary to the manifest public interest. The trial court articulated its reasons for denying the State's motion during multiple hearings and in a written order. After a careful review of this record, we conclude that the trial court determined that the State, by requesting to nolle prosequi the murder count following the rejection of the plea agreement, was attempting to undermine the trial court's authority to reject the plea agreement and circumvent that rejection, contrary to the manifest public interest. The trial court stated that it would not accept the nolle because "[the State] is just attempting to do [in]directly what [the State has been] denied to do directly." It is also evident that the State, while attempting to nolle prosequi the murder charge following the rejection of the plea agreement, was aware of the trial court's concerns in this regard. The comments by ADA Hicks in court and the notice of nolle prosequi indicate that, following the rejection of the plea agreement, the State did not want the trial court to link the nolle of the murder count to any plea agreement. Because we conclude that the trial court clearly articulated its reasons for denying the motion in the record, which is the first requirement of our inquiry, we turn to decide whether the trial court erred when it denied the motion for nolle prosequi.

Notably, the trial court was presented with a plea agreement, pursuant to Tennessee Rule of Criminal Procedure 11(e)(1)(c), which included as its major component the dismissal of the second degree murder charge.[1] The trial court properly considered the statement of ADA Hicks that was offered as the factual basis for the plea agreement. Pursuant to Tennessee Rule of Criminal Procedure 11(e)(4), the trial court then rejected the plea agreement and clearly stated in the record its reasons for rejecting the plea agreement. A trial court has wide discretion to accept or reject a plea agreement. A trial court's discretion under Rule 48 to refuse to accept a nolle is much more limited. However, if, as in this case, in response to the trial court's rejection of a plea agreement that includes the dismissal of a second degree murder charge and a guilty plea to reckless homicide, the State moves to nolle prosequi the second degree murder charge, it is understandable to us that the trial court could view the State's strategy to be "attempting to do [in]directly what [it is] denied to do directly."

The issue before us, while couched by the parties in terms of the rejection of the State's request to nolle prosequi a second degree murder charge, is actually an issue of the trial court retaining the discretion and power to reject a plea agreement. We conclude that the public has a manifest interest in the trial court retaining its discretion to accept or reject plea agreements. This

---

[1] We note that the Defendant, as a result of one killing, was indicted for both second degree murder and reckless homicide, a lesser-included offense of second degree murder. The dismissal of the second degree murder count would preclude a conviction for voluntary manslaughter.

discretion is undermined when the State attempts to circumvent the trial court's rejection of a proposed plea agreement by filing a motion for nolle prosequi of the charge that the State unsuccessfully attempted to dismiss as part of the plea agreement.

The trial court concluded, and we agree, that the public has a manifest interest in the trial court retaining its discretion to reject a guilty plea, and that discretion is threatened by the State's actions in this case. The State told the trial court at the plea hearing that the Defendant "had the gun in his hand and was waving it around. The gun discharged. It struck the victim in the upper arm. Just one shot was fired." Based upon this evidence, the trial court concluded, as did the grand jury, that a jury should determine whether the Defendant had the requisite mental state for second degree murder. See State v. Hines, 919 S.W.2d 573 (Tenn. 1995). Therefore, the trial court rejected a plea agreement that would dismiss the second degree murder count and allow the Defendant to plead guilty to reckless homicide. As noted by the trial court, one valid reason for rejecting a plea agreement is that the proposed sentence is considered too lenient under the circumstances. Hines, 919 S.W.2d at 578. While the State contends that it has an expert witness who would testify that no one could know that shooting a person in the arm would cause death in this manner, there are also ample facts upon which a jury may conclude that the Defendant did not intend to shoot his wife in the arm but intended to shoot her in a part of her boy more likely to kill her. Further, the credibility of expert witnesses as well as the weight and value (if any) of expert testimony are all jury questions.

We conclude, as did the trial court, that the public has an interest in allowing a jury to hear the facts of this case, which conclusively include the shooting death of the victim by the Defendant, and determine the Defendant's mental state at the time of the killing. Furthermore, it is clear to this Court that there is a manifest public interest in preventing the State from attempting to undermine the ability of the trial court to reject a proposed plea agreement. Under these unique circumstances, therefore, we conclude that the trial court did not abuse its limited discretion under Rule 48(a) when it denied the State's motion to nolle prosequi the second degree murder charge.

## B. Recusal

The Defendant asserts that the trial court erred when it denied his motion requesting that the trial court recuse itself from the Defendant's case. The Defendant, in his brief, claims that recusal is required because: (1) the trial judge predetermined a central issue in the case, that being the intent of the Defendant; (2) the trial judge attempted to engage in fact-finding with the State; and (3) a reasonable question of impartiality exists because the trial judge addressed defense counsel about this case during a jury trial on another matter. The State contends that the Defendant has waived this issue because the reasons for recusal raised on appeal differ from the reasons the Defendant raised in his application for extraordinary appeal. We agree with the State.

The three contentions that the Defendant sets forth in his brief supporting his motion for recusal were not raised as reasons for recusal below, and were not the bases upon which we granted Rule 10 review. Therefore, these issues are not properly before us. See Minor ex rel. Hardin v. State, No. M2001-00545-CCA-R10-PC, 2001 WL 1545498 at * 12 (Tenn. Crim. App., at Nashville, Dec.

-8-

5, 2001), *no perm. app. filed*. Further, even if the Defendant had not waived this issue, we could not grant him the relief that he seeks. The initial motion for recusal stated that the trial judge should be recused because an article in a local newspaper allegedly reported that the trial judge refused the proposed plea agreement "'because he received a letter from the alleged victim'[sic]." The Defendant contends that this report creates an appearance of impropriety in that the trial judge received an improper ex parte communication and that the trial judge discussed an ongoing case with the press. We disagree.

A trial judge should recuse himself or herself whenever the judge has any doubt as to his or her ability to preside impartially or whenever his or her impartiality can reasonably be questioned. State v. Pannell, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001). This is an objective standard. Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). "Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. The trial judge retains discretion over his or her recusal. State v. Smith, 906 S.W.2d 6, 11 (Tenn. Crim. App. 1995). Unless the evidence in the record indicates that the failure to recuse was an abuse of discretion, this court will not interfere with that decision. State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995).

In the case under submission, we conclude that the trial court did not abuse its discretion when it denied the Defendant's motion to recuse. The record reflects that the trial court considered the Defendant's motion, and the trial judge stated that it is his policy to not read any letters written to him "except in the courtroom." Further, the trial judge stated that the reason he refused the plea agreement in this case was because a life was taken by a deadly weapon, not because of a letter or any "personal malice or . . . ill feelings" toward the Defendant. Given these facts and circumstances, we cannot conclude that the trial judge abused his discretion by refusing to recuse himself. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment, and we remand the case for further proceedings in the trial court consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE